1    Daniel B. Lifschitz (SBN 285068)
2    **JOHNSON & JOHNSON LLP**
     439 North Canon Drive, Suite 200
3    Beverly Hills, California 90210
     Telephone:   (310) 975-1080
4    Facsimile:   (310) 975-1095
     Email:       dlifschitz@jjllplaw.com
5

6
     *Attorneys for Defendants*
7    EUPHORIC SUPPLY INC. and
     JULIAN ARMSTRONG
8
                    **UNITED STATES DISTRICT COURT**
9
                 **SOUTHERN DISTRICT OF CALIFORNIA**
10

11   BACKGRID USA, INC., a                CASE NO. 3:20-cv-00914-BEN-BLM
     California corporation,
12                                        **MEMORANDUM OF POINTS AND**
                                          **AUTHORITIES IN SUPPORT OF**
13          Plaintiff,                    **DEFENDANTS' MOTION TO**
                                          **DISMISS COMPLAINT**
14          vs.
                                          [Notice of Motion and Motion to Dismiss,
15   EUPHORIC SUPPLY INC., a              Request for Judicial Notice, and
     California corporation; JULIAN       Declaration of Daniel B. Lifschitz With
16   ARMSTRONG, an individual; and        Exhibits 1-8 filed concurrently]
     DOES 1-10, inclusive,
17                                        Date:       July 6, 2020
18          Defendants.                   Time:       10:30 a.m.
                                          Courtroom: 5A
19                                        Judge:      Hon. Roger T. Benitez
20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    Introduction ............................................................................................... 1

II.   Factual and Legal Background ................................................................... 2

III.  Legal Standard .......................................................................................... 4

      A.  Rule 12(b)(1) ................................................................................... 4

      B.  Rule 12(b)(6) ................................................................................... 4

      C.  Defendants' Request for Judicial Notice ........................................ 5

IV.   Argument .................................................................................................. 5

      A.  Plaintiff Has Not Established Standing to Sue ............................... 5

      B.  Plaintiff's "Thin" Copyright Grants Very Limited Protection ..... 6

      C.  Defendants' Figurine Does Not Infringe the West Photo ............. 8

      D.  Defendants' Packaging Does Not Infringe the West Photo ......... 9

      E.  Defendants Have Made Fair Use of the West Photo .................. 10

            1.  Purpose and Character of Use ............................................. 11

            2.  Nature of Copyrighted Work .............................................. 12

            3.  Amount and Substantiality Used ......................................... 13

            4.  Effect of Use on Market ..................................................... 14

      F.  Plaintiff's Complaint Cannot Be Cured By Amendment ........... 16

V.    Conclusion .............................................................................................. 16

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

# TABLE OF AUTHORITIES

Cases                                                                    Page(s)

*AAA Flag & Banner Mfg., Co. v. Flynn Signs & Graphics, Inc.*,
   No. CV09-02053 ODW (VKBx),
   2010 U.S. Dist. LEXIS 42219 (C.D. Cal. Apr. 29, 2010) .................................... 6

*Ajaxo, Inc. v. Bank of Am. Tech. & Operations, Inc.*,
   No. 2:07-CV-945-GEB-GGH,
   2007 U.S. Dist. LEXIS 89969 (E.D. Cal. Nov. 21, 2007) ................................... 5

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
   382 F. Supp. 3d 312 (S.D.N.Y. 2019) ........................................................ 8, 14, 15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................ 4

*Barcroft Media, Ltd. v. Coed Media Grp., LLC*,
   297 F. Supp. 3d 339 (S.D.N.Y. 2017) ........................................................ 7, 12, 13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................ 4

*Blizzard Entm't, Inc. v. Lilith Games (Shanghai) Co.*,
   No. 15-cv-04084-CRB,
   2018 U.S. Dist. LEXIS 39341 (N.D. Cal. Mar. 8, 2018) ................................... 5

*Blocker v. Black Entm't TV, LLC*,
   No. 3:17-CV-01406-AC,
   2019 U.S. Dist. LEXIS 54446 (D. Or. Mar. 6, 2019) ....................................... 6

*Brownmark Films, LLC v. Comedy Partners*,
   682 F.3d 687 (7th Cir. 2012) ............................................................................ 10

*Burrow-Giles Lithographic Co. v. Sarony*,
   111 U.S. 53 (1884) .............................................................................................. 7

*BWP Media USA, Inc. v. Gossip Cop Media, Inc.*,
   196 F. Supp. 3d 395 (S.D.N.Y. 2016) .............................................................. 13

*Calkins v. Playboy Enterprises Intern., Inc.*,
   561 F.Supp.2d 1136 (E.D. Cal. 2008) ...................................................... 12, 13, 14

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994) ...................................................................................... 11, 13, 14

*Cariou v. Prince*,
   714 F.3d 694 (2d Cir. 2013) ........................................................................ 10, 11

*Casterlow-Bey v. Trafford Publ'g Co.*,
   No. 3:17-cv-05459-RJB,
   2018 U.S. Dist. LEXIS 128161 (W.D. Wash. July 31, 2018) ............................. 6

*City of Inglewood v. Teixeira*,
   No. CV-15-01815-MWF (MRWx),

2015 U.S. Dist. LEXIS 114539 (C.D. Cal. Aug. 20, 2015) .................................10
*Coyle v. O'Rourke*,
    No. LA CV14-07121 JAK (FFMx),
    2015 U.S. Dist. LEXIS 585 (C.D. Cal. Jan. 5, 2015) ............................................9
*DeSoto v. Yellow Freight System, Inc.*,
    957 F.2d 655 (9th Cir. 1992) ..............................................................................16
*Diaz v. Intuit, Inc.*,
    No. 5:15-cv-01778-EJD,
    2018 U.S. Dist. LEXIS 82009 (N.D. Cal. May 15, 2018) ....................................5
*Downing v. Abercrombie & Fitch*,
    265 F.3d 994 (9th Cir. 2001) ................................................................................9
*Eagle Access Control Sys. v. USA Power Gate, Inc.*,
    No. CV 07-3789 SVW (RCx),
    2008 U.S. Dist. LEXIS 131308 (C.D. Cal. Dec. 18, 2008) ..................................9
*Ets-Hokin v. Skyy Spirits Inc.*,
    323 F.3d 763 (9th Cir. 2003) ................................................................................8
*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991) ..............................................................................................6
*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*,
    139 S. Ct. 881 (2019) ............................................................................................5
*Gentieu v. Tony Stone Images/Chicago, Inc.*,
    255 F. Supp. 2d 838 (N.D. Ill. 2003) ...................................................................7
*Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*,
    925 F.3d 1140 (9th Cir. 2019) ..............................................................................5
*Gray v. Perry*,
    No. 2:15-CV-05642-CAS-JCx,
    2020 U.S. Dist. LEXIS 46313 (C.D. Cal. Mar. 16, 2020) ...................................8
*Hofheinz v. Discovery Communs., Inc.*,
    2001 U.S. Dist. LEXIS 14752, at *23 (S.D.N.Y. Sep. 10, 2001) .......................16
*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    546 F.3d 981 (9th Cir. 2008) ................................................................................4
*In re Ford Motor Co./Citibank (S. Dakota), N.A.*,
    264 F.3d 952 (9th Cir. 2001) ................................................................................4
*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ..............................................................................4
*Kelly v. Arriba Soft Corp.*,
    336 F.3d 811 (9th Cir. 2002) ...............................................................11, 13, 14
*Kirtsaeng v. John Wiley & Sons, Inc.*,
    136 S. Ct. 1979 (2016) ........................................................................................16
*Love v. United States*,
    915 F.2d 1242 (9th Cir. 1990) ..............................................................................4

iv

*Lucky Break Wishbone Corp. v. Sears, Roebuck & Co.*,
  528 F. Supp. 2d 1106 (W.D. Wash. 2007)...............................................................8
*Mattel Inc. v. Walking,*
  *Mt. Prods.*, 353 F.3d 792 (9th Cir. 2003)............................................................10
*McNutt v. General Motors Acceptance Corp.*,
  298 U.S. 178 (1936) .............................................................................................4
*Muench Photography, Inc. v. Pearson Educ., Inc.*,
  No. 12-cv-01927-WHO,
  2013 U.S. Dist. LEXIS 165884 (N.D. Cal. Nov. 19, 2013)....................................5
*Multimedia, Ltd. Liab. Co. v. Burbank High Sch. Vocal Music Ass'n,*
  953 F.3d 638 (9th Cir. 2020).................................................................................10
*Perfect 10, Inc. v. Giganews, Inc.*,
  No. CV 11-07098-AB (SHx),
  2015 U.S. Dist. LEXIS 184784 (C.D. Cal. June 3, 2015) .....................................1
*Reece v. Island Treasures Art Gallery, Inc.*,
  468 F. Supp. 2d 1197 (D. Haw. 2006) ...................................................................7
*Reed Elsevier, Inc. v. Muchnick*,
  559 U.S. 154, (2010) .............................................................................................5
*Rutman Wine Co. v. E. & J Gallo Winery*,
  829 F.2d 729 (9th Cir. 1987).................................................................................16
*Seltzer v. Green Day, Inc.*,
  725 F.3d 1170 (9th Cir. 2013)....................................................................11, 12, 14
*Stern v. Does*,
  978 F.Supp.2d 1031 .............................................................................................16
*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) .............................................................................................5
*Walsh v. Townsquare Media, Inc.*,
  No. 19-CV-4958 (VSB),
  2020 U.S. Dist. LEXIS 96090 (S.D.N.Y. June 1, 2020)................................13, 15
*Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*,
  210 F. Supp. 2d 147 (E.D.N.Y. 2002) .................................................................10

Statutes

17 U.S.C. § 102.............................................................................................................9
17 U.S.C. § 505...........................................................................................................16
17 U.S.C. ¶ 107...............................................................................................2, 10, 11

Rules

Fed. R. Civ. Proc. 12......................................................................................................1
Fed. R. Civ. Proc. 12(b)(1) ...........................................................................................4

Fed. R. Civ. Proc. 12(b)(1) ............................................................................4
Fed. R. Evid. 201 ...........................................................................................5

Other Authorities

Nimmer on Copyright.............................................................................1, 2, 7

MEMORANDUM OF POINTS AND AUTHORITIES ISO MOTION TO DISMISS

1   **MEMORANDUM OF POINTS AND AUTHORITIES**

2   **I.   INTRODUCTION**

3        Plaintiff Backgrid USA, Inc. ("Plaintiff") is a serial copyright litigant.[1] In this

4   case, Plaintiff is attempting to claim it owns the visual appearance of well-known

5   musician Kanye West ("Mr. West") by dint of having taken a standard paparazzi

6   photograph of him (the "West Photo") and may therefore control the creation of any

7   future work reflecting Mr. West's appearance on the day the West Photo was taken.

8   This argument stretches the bounds of copyright protection beyond recognition and

9   should not be countenanced by the Court even at this early stage of litigation.

10        To begin with, Plaintiff has failed to identify a valid copyright registration

11   number for the West Photo, depriving this Court of subject matter jurisdiction to

12   even hear Plaintiff's infringement claim. *See* Section IV.A, *infra*. Yet even if

13   Plaintiff were to cure this defect through amendment, its claim would still not

14   withstand scrutiny. It is textbook law that the copyright protection in a photograph

15   does not extend to its underlying subject matter, only to the creative choices made

16   by the photographer in capturing that subject matter. *See* Nimmer on Copyright §

17   2A.08[E][3][c] (2019). Yet Plaintiff's Complaint argues that a figurine bearing Mr.

18   West's likeness (the "Figurine"), manufactured by Defendants Euphoric Supply

19   LLC ("Euphoric") and Julian Armstrong (collectively "Defendants"), somehow

20   infringes on its copyright to a photo depicting Mr. West bearing the same outfit.

21   Dkt. 1 ("Complaint") ¶ 11. Plaintiff does not allege that the appearance of Mr. West

22   reflected in the West Photo was the result of a single creative choice made by its

23   photographer. *See generally* Complaint. Rather, the West Photo simply reflects Mr.

24

25   [1] *See* Defendants' Request for Judicial Notice ("RJN"), Ex. 1 (identifying 22 cases filed by Plaintiff in the last three years); *compare* RJN, Ex. 2 (identifying 17 cases

26   brought by Perfect 10, Inc. since 2003), *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHx), 2015 U.S. Dist. LEXIS 184784, at *15 (C.D. Cal. June 3,

27   2015) (denoting Perfect 10, Inc. as a "serial litigant" despite its lower litigation rate than Plaintiff). Courts may consider facts, including the existence and content of

28   publicly available documents, that are subject to judicial notice in deciding motions under Fed. R. Civ. Proc. 12. *See generally* RJN at 2-4 (providing authority).

West's natural appearance on the day that the West Photo was taken, which Plaintiff has no copyright to and cannot prevent Defendants from utilizing.

Plaintiff's claim concerning the cardboard packaging of the Figurine (the "Packaging") fares no better. Plaintiff's copyright protection in the West Photo is derived from the total composition of the photograph, which encompasses the various creative decisions made by the photographer (*i.e.*, what overall subject matter to include in the frame and the choices made with respect to each such element). *See* Nimmer § 2A.08[E][3][c] ("It is thus the original (and manifested) selection and arrangement, rather than the underlying subject matter, that constitutes the protectable expression in a photograph."). The Packaging, by contrast, strips out literally every compositional element of the West Photo other than Mr. West's unprotected appearance itself. Not only does this vitiate any authorship claimed by Plaintiff, its use to identify the aesthetic replicated by the Figurine, which itself conveys protected expression regarding Mr. West, constitutes a transformative fair use under 17 U.S.C. § 107. Accordingly, Plaintiff's copyright infringement claim fails on all counts, and the Complaint should be dismissed.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

On February 21, 2029, Yahoo Sports published an article entitled "Who Is Kanye West's Super Stylish Companion?" featuring a close variant of the West Photo. *See* RJN, Ex. 3. The variant is used to identify and discuss the relationship between Mr. West and Lotta Volkova ("Ms. Volkova"), a well-known Russian fashion stylist. *Id.* Ms. Volkova is most famous for her "rebellion" against "prepackaged" aesthetics through her work in the fashion industry. *See* RJN, Ex. 4. Mr. West's appearance alongside Ms. Volkova was further informed by his sudden "Embracing [of] The Rainbow Hair Trend," which continued a pattern of Mr. West adopting experimental hairstyles. *See* RJN, Ex. 5. Defendants took interest in the statement intended by Mr. West's appearance and were thereby inspired to create the Figurine as a commentary on Mr. West's relationship to the fashion world and

the commoditization of his image by reducing Mr. West's then-current likeness to a simplistic, "pre-packaged" figurine. *See* Complaint ¶ 10. The Figurine reflects the clothing and hairstyle that Mr. West chose for himself on the day of the West Photo, while the Packaging utilizes a tightly cropped version of the West Photo that omits all photographic details besides Mr. West's likeness in order to accurately identify the basis for the Figurine's aesthetic design. *Id.* The Figurine was hand-made in a limited sold-out run and has long since been out of stock.

On May 15, 2020, Plaintiff filed the instant action against Defendants, alleging a single claim of copyright infringement. *See generally* Complaint. The Complaint alleges that Plaintiff has registered the West Photo with the United States Copyright Office. Complaint ¶ 8. However, the registration number listed for the West Photo – "VA002152029" – yields no results in the Copyright Office's public database. *See* RJN, Ex. 6. The Report on the Filing or Determination of an Action or Appeal Regarding a Copyright attached to the Complaint (Dkt. 1-3 ["Report"]) provides the same incorrect registration number, but provides further information under the "TITLE OF WORK" field by listing the copyright at issue as "Wanted dread & alive." Searching the Copyright Office's public database for this title yields three results, only one of which is a work of visual art (VAu000215029). *See* RJN, Ex. 7. Comparing the two registration numbers, it would appear Plaintiff intended to identify VA00215029, but interposed an erroneous additional digit:

|                          |          |
|--------------------------|----------|
| Copyright Office number: | 215029   |
| Plaintiff number:        | 215**2**029 |

Viewing the registration details of this work, it becomes apparent that Plaintiff has not correctly identified the work in suit. VAu000215029 was registered in 1991, nearly three decades before the West Photo was taken. *See* RJN, Ex. 8. It is therefore impossible that the West Photo shares that registration number.

\\

\\

## III.   <u>LEGAL STANDARD</u>

### A. R<small>ULE</small> 12(<small>B</small>)(1)

Under Fed. R. Civ. Proc. 12(b)(1), a party may seek dismissal of an action for lack of subject matter jurisdiction. The non-moving party bears the burden of proving that the case is properly in federal court. *See In re Ford Motor Co./Citibank (S. Dakota), N.A.*, 264 F.3d 952, 957 (9th Cir. 2001) ("The party asserting federal jurisdiction bears the burden of proving the case is properly in federal court.") (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). Dismissal is appropriate if the complaint, considered in its entirety, on its face fails to allege facts that are sufficient to establish subject matter jurisdiction. *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 546 F.3d 981, 985 (9th Cir. 2008) (citing *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1990)). Where the accuracy of a plaintiff's allegations conferring federal jurisdiction are disputed (a so-called "factual attack"), a district court need not presume the truthfulness those allegations and may review evidence beyond the complaint without converting the motion into a motion for summary judgment. *Id.*

### B. R<small>ULE</small> 12(<small>B</small>)(6)

Under Fed. R. Civ. Proc. 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The non-moving party bears the burden of alleging "enough facts to state a claim to relief that is on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The complaint is considered in its entirety, "as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the

1    complaint by reference, and matters of which a court may take judicial

2    notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

3    ### C. DEFENDANTS' REQUEST FOR JUDICIAL NOTICE

4    "When ruling on a motion to dismiss, a court may take judicial notice of

5    registrations with the Copyright Office as well as court documents already in the

6    public record." *Blizzard Entm't, Inc. v. Lilith Games (Shanghai) Co.*, No. 15-cv-

7    04084-CRB, 2018 U.S. Dist. LEXIS 39341, at *21 (N.D. Cal. Mar. 8, 2018); *see*

8    *also Ajaxo, Inc. v. Bank of Am. Tech. & Operations, Inc.,* No. 2:07-CV-945-GEB-

9    GGH, 2007 U.S. Dist. LEXIS 89969, at *2 (E.D. Cal. Nov. 21, 2007).

10    Similarly, "[p]ublically accessible websites and news articles are proper

11    subjects of judicial notice." *Diaz v. Intuit, Inc*., No. 5:15-cv-01778-EJD, 2018 U.S.

12    Dist. LEXIS 82009, at *11 (N.D. Cal. May 15, 2018) (citations omitted).

13    Accordingly, Defendants request that the Court take judicial notice of the

14    exhibits offered in support of their motion to dismiss (Defs.' RJN Exs. 1-8), which

15    consist of records from PACER, the Copyright Office, and news articles on

16    publicly available websites noticeable pursuant to Fed. R. Evid. 201.

17    ## IV.   __ARGUMENT__

18    ### A. PLAINTIFF HAS NOT ESTABLISHED STANDING TO BRING SUIT

19    Before pursuing an infringement claim in court, a copyright claimant must

20    register their work with the United States Copyright Office. *Fourth Estate Pub.*

21    *Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887 (2019); *see also*

22    *Muench Photography, Inc. v. Pearson Educ., Inc*., No. 12-cv-01927-WHO, 2013

23    U.S. Dist. LEXIS 165884, at *25 (N.D. Cal. Nov. 19, 2013) ("A valid copyright

24    registration is necessary to bring a copyright infringement action.") (citing *Reed*

25    *Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 158, (2010); *Gold Value Int'l Textile, Inc.*

26    *v. Sanctuary Clothing, LLC*, 925 F.3d 1140, 1142 (9th Cir. 2019) (registration is a

27    "precondition to filing an action for copyright infringement"). Absent proof of

28    registration, a district court does not have subject matter jurisdiction over an

infringement claim. *See AAA Flag & Banner Mfg., Co. v. Flynn Signs & Graphics, Inc.,* No. CV09-02053 ODW (VKBx), 2010 U.S. Dist. LEXIS 42219, at *5 (C.D. Cal. Apr. 29, 2010) ("Proof of ownership of an existing, valid and registered copyright interest is a statutory prerequisite to filing an infringement action"); *Blocker v. Black Entm't TV, LLC*, No. 3:17-CV-01406-AC, 2019 U.S. Dist. LEXIS 54446, at *13 (D. Or. Mar. 6, 2019) (dismissing infringement claim where complaint failed to establish the plaintiff owned a valid copyright); *Casterlow-Bey v. Trafford Publ'g Co*., No. 3:17-cv-05459-RJB, 2018 U.S. Dist. LEXIS 128161, at *20 (W.D. Wash. July 31, 2018) (reviewing the records of the Copyright Office to determine veracity of plaintiff's claim to copyright registration).

Here, Plaintiff has submitted no evidence that the West Photo has been properly registered with the United States Copyright Office. The Complaint avers that "[t]je Copyright registration number for the West Photo is VA002152029." Complaint ¶ 8. However, this registration number yields no results in the Copyright Office's public database and, based on the contents of the Report, appears intended to be for a work entitled "Wanted dread & alive" with a nearly identical registration number (VAu000215029) from 1991. *See* RJN, Exs. 6-8. The Complaint therefore identifies an incorrect copyright not in suit and is bereft of any information that could show the West Photo is properly registered with the Copyright Office.  For this reason alone, the Complaint must be dismissed in its entirety.

**B. PLAINTIFF'S "THIN" COPYRIGHT GRANTS VERY LIMITED PROTECTION**

Even if Plaintiff has a proper copyright registration for the West Photo, that does not mean Defendants have infringed upon its copyright. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 348 (1991) ("The mere fact that a work is copyrighted does not mean that every element of the work may be protected."). That is because "[c]opyright protection may extend only to those components of a work that are original to the author." *Id.* "[F]or photographs[,] a copyright does not extend to the subject matter of the image itself, but instead protects the expression

of the subject as contained in such elements of the author's composition as the selection of lighting, shading, camera angle, background and perspective." *Gentieu v. Tony Stone Images/Chicago, Inc.*, 255 F. Supp. 2d 838, 848 (N.D. Ill. 2003) (citing *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 60 (1884)); *see also Reece v. Island Treasures Art Gallery, Inc.*, 468 F. Supp. 2d 1197, 1202-03 (D. Haw. 2006) (photographic elements "derived from the public domain or otherwise unprotected by copyright cannot serve as the basis of [an infringement] claim.").

Here, any copyright in the West Photo must inherently exclude the actual subject matter of the photograph – Mr. West himself – which the photographer had no role in creating. *See* Nimmer § 2A.08[E][3][c] ("Insofar as the underlying subject matter preexisted the photograph (e.g., the individual portrayed in a portrait, the product in an advertisement), which in turn merely captured the reality of its existence, that subject matter is manifestly unoriginal to the photographer.").

Moreover, unlike the photographer in the seminal *Burrow-Giles* case, the photographer of the West Photo played no role in selecting or arranging West's pose, clothing, hairstyle, or any other aspect of his physical appearance so as to render them copyrightable components of the West Photo. *Compare Burrow-Giles Lithographic Co.*, 111 U.S. at 60. The West Photo is "essentially factual in nature. The photographer[] predominantly captured [Mr. West] in public, as [he] naturally appeared, and [was] not tasked with directing the subject[], altering the backdrop[], or otherwise doing much to impose creative force on the [West Photo] or infuse the [West Photo] with [his] own artistic vision." *Barcroft Media, Ltd. v. Coed Media Grp., LLC*, 297 F. Supp. 3d 339, 354 (S.D.N.Y. 2017). The most that can be said is that Plaintiff's photographer selected the particular composition of the West Photo by capturing Mr. West and Ms. Volkova together against a particular backdrop, as dictated by the photographer's choice of framing and the angle of the shot.

Because the West Photo is bereft of creativity, it is entitled to only "thin" copyright, which protects against only virtually identical copying of the protected

1   elements of the photograph. *Ets-Hokin v. Skyy Spirits Inc*., 323 F.3d 763, 764 (9th

2   Cir. 2003). Here, that would require Defendants to have appropriated the creative

3   decisions of the West Photo's compositional selection and arrangement. *Lucky*

4   *Break Wishbone Corp. v. Sears, Roebuck & Co*., 528 F. Supp. 2d 1106, 1124 (W.D.

5   Wash. 2007) ("'Virtually identical,' not 'substantially similar,' is the standard for

6   determining whether a thin copyright has been copied, and thus infringed."); *Gray*

7   *v. Perry*, No. 2:15-CV-05642-CAS-JCx, 2020 U.S. Dist. LEXIS 46313, at *11 n.2

8   (C.D. Cal. Mar. 16, 2020) ("[W]hen a work embodies only the minimum level of

9   creativity necessary for copyright, it is said to have 'thin' copyright protection. A

10  thin copyright only protects against virtually identical copying.").

11   **C. DEFENDANT'S FIGURINE DOES NOT INFRINGE THE WEST PHOTO**

12       Viewing the West Photo and the Figurine side-by-side, it is apparent that not

13  a single protected element of the West Photo has been copied by the Figurine.

14

15

16

17    

18

19

20

21       The potentially protected elements of the West Photo simply cannot be found

22  in the Figurine; indeed, it would be impossible to copy the West Photo's static

23  angle, lighting, or compositional structure in a three-dimensional medium such as a

24  posable figurine. Instead, all that is copied is Mr. West's appearance and outfit,

25  which Plaintiff's photographer was not creatively responsible for and therefore has

26  no copyright claim to. *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,

27  382 F. Supp. 3d 312, 323 (S.D.N.Y. 2019) ("although the elements constituting a

28  photographer's original expression of her subject are copyrightable, the subject

itself - and general features of that subject - are not.") ("*Warhol*").

As the foregoing makes clear, Plaintiff is essentially attempting to extend its limited copyright in the West Photo to cover Mr. West's likeness itself, which "'is not a work of authorship within the meaning of 17 U.S.C. § 102,' even if it is 'embodied in a copyrightable photograph.'" *Coyle v. O'Rourke*, No. LA CV14-07121 JAK (FFMx), 2015 U.S. Dist. LEXIS 585, at *25 (C.D. Cal. Jan. 5, 2015) (quoting *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1004 (9th Cir. 2001)); *see also Eagle Access Control Sys. v. USA Power Gate, Inc*., No. CV 07-3789 SVW (RCx), 2008 U.S. Dist. LEXIS 131308, at *14 (C.D. Cal. Dec. 18, 2008) (dismissing copyright infringement claim over photograph of circuit board that "seeks protection for a much broader copyright that would encompass the circuit board itself, not merely the photograph of the circuit board."). Thus, Plaintiff cannot state a claim for copyright infringement against the Figurine.

### D. DEFENDANT'S PACKAGING DOES NOT INFRINGE THE WEST PHOTO

Plaintiff's claim that the Packaging infringes its copyright in the West Photo fares no better than its claim against the Figurine. As previously discussed, any copyright in the West Photo is limited to the particular selection and arrangement of compositional elements in the photo – *i.e.,* Mr. West in combination with Ms. Volkova as framed by the backdrop created through the photographer's choice of angle. Once again, however, a side-by-side comparison demonstrates that none of these potentially protectable choices were copied to create the Packaging.



1    As can be clearly seen, Defendants did not simply reproduce the West Photo

2    as part of the Packaging, but instead isolated Mr. West's likeness and stripped out

3    virtually every creative decision made by Plaintiff's photographer. Ms. Volkova

4    and a third individual behind Mr. West have been removed entirely, the framing has

5    been limited to Mr. West himself, and the backdrop has been completely replaced

6    with a colorful gradient. *See Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*, 210 F.

7    Supp. 2d 147, 163 (E.D.N.Y. 2002) ("Differences become particularly important

8    where copyright protection is 'thin.'"). Because these are essentially the only

9    creative choices made by a paparazzi photographer who is not otherwise directing

10   the subject of his photography, their omission leaves no further protected elements

11   through which to form a copyrightable selection and arrangement. Thus, Plaintiff

12   cannot state a claim for copyright infringement against the Packaging.

13   **E. DEFENDANTS HAVE MADE FAIR USE OF THE WEST PHOTO**

14       Even if Plaintiff were able to show that the Figurine or Packaging copied

15   independently protectable elements of the West Photo – which they do not – such

16   copying would be fully protectable by the fair use doctrine under 17 U.S.C. § 107.

17   This determination can be made at the motion to dismiss stage where both works at

18   issue are before the court. *See Cariou v. Prince*, 714 F.3d 694, 707 (2d Cir. 2013)

19   (citing *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687 (7th Cir. 2012));

20   *City of Inglewood v. Teixeira*, No. CV-15-01815-MWF (MRWx), 2015 U.S. Dist.

21   LEXIS 114539, at *19-20 (C.D. Cal. Aug. 20, 2015) (collecting cases).

22       "Recognizing that science and art generally rely on works that came before

23   them and rarely spring forth in a vacuum, the [Copyright] Act limits the rights of a

24   copyright owner regarding works that build upon, reinterpret, and reconceive

25   existing works." *Mattel Inc. v. Walking Mt. Prods.*, 353 F.3d 792, 799 (9th Cir.

26   2003); *see also Tresóna Multimedia, Ltd. Liab. Co. v. Burbank High Sch. Vocal*

27   *Music Ass'n,* 953 F.3d 638, 647 (9th Cir. 2020) ("the fair use defense renders a use

28   non-infringing, and has long served as an important defense in copyright law.").

Section 107 provides four factors to consider in determining whether fair use is an available defense: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107. The factors are not to be analyzed in isolation, but "weighed together, in light of the purposes of copyright" and the facts of a given case. *Campbell v. Acuff-Rose Music, Inc*., 510 U.S. 569, 578 (1994); *see Kelly v. Arriba Soft Corp*., 336 F.3d 811, 818 (9th Cir. 2002) (noting that courts must "balance these factors in light of the objectives of copyright law, rather than view them as definitive or determinative tests.").

### 1.  Purpose and Character of Use

As the Supreme Court has explained, the question posed by the first fair use factor is whether a defendant's work "merely 'supersede[s] the objects' of the original creation… or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is 'transformative.'" *Campbell*, 510 U.S. at 579. Transformative works "lie at the heart of the fair use doctrine's guarantee of breathing space within the confines of copyright." *Id*. Therefore, a work is considered transformative if "new expressive content or message is apparent." *Seltzer v. Green Day, Inc.,* 725 F.3d 1170, 1177 (9th Cir. 2013); *see also Cariou*, 714 F. 3d at 708 (artist's altering of photographs were transformative because they had a "fundamentally different aesthetic"); *Kelly*, 336 F.3d at 818-20 (use of photographs as thumbnail images in a search engine was transformative because it had a different purpose than the original artwork). "[T]he more transformative the new work, the less will be the significance of other factors … that may weigh against a finding of fair use." *Campbell*, 510 U.S. at 579.

In this case, Plaintiff's and Defendants' respective uses of the West Photo have nothing in common. Plaintiff licenses its photography to gossip and news

outlets in order for them to comment on the daily comings-and-goings of various celebrity figures – a use that is "fleetingly relevant and ha[s] limited staying power (and therefore market power) beyond a short window in which [it] offer[s] timely news and gossip about [its] subjects." *Barcroft Media*, 297 F. Supp. 3d at 352. Defendants' use of the West Photo to authenticate the outfit depicted in the design of the Figurine in no way substitutes for the West Photo's original use, as none of Defendants' customers would see purchase of the Figurine as a substitute for viewing Plaintiff's paparazzi photography in its traditional setting. Neither the Figurine nor Packaging served to inform the public of Mr. West's relationship with Ms. Volkova or their whereabouts; instead, it demonstrates that the Figurine accurately depicted Mr. West's appearance around the time the West Photo was taken, thereby assisting in the conveyance of the Figurine's message.

The fundamentally divergent use of the West Photo by the parties permits transformative use to be found even if there were "few physical changes to the original or [the use] fails to comment on the original." *Seltzer*, 725 F.3d at 579 (inclusion of artwork in the backdrop to a band's live performance served different purposes than the original's intended use); *see also Calkins v. Playboy Enterprises Intern., Inc*., 561 F.Supp.2d 1136, 1141 (E.D. Cal. 2008) (republication of copyrighted portrait in magazine was deemed transformative because its purpose of informing readers was different than the original's purpose of serving as a gift). Yet, as noted, Defendants *did* fundamentally alter the West Photo by stripping out all contextual compositional details and replacing the background, and did so in order to comment on Mr. West's position in avant-garde pop culture by reducing his fashion sense to the format of a children's toy and matching Mr. West's own transgressive conduct with an equally transgressive visual appropriation.

Accordingly, the first fair use factor weighs in favor of Defendants.

## 2.  Nature of Copyrighted Work

The second fair use factor examines whether the work in suit is of a type

1  "closer to the core of intended copyright protection." *Campbell*, 510 U.S. at 586.

2  This factor tips in favor of fair use when the work's primary use is informational

3  rather than creative. *Kelly*, 336 F.3d at 820; *see Barcroft*, 297 F. Supp. 3d at 354

4  ("Although photography, including photography of a celebrity walking around in

5  public, certainly involves skill and is not devoid of expressive merit, [paparazzi

6  images] are further from the core of copyright protections than creative or fictional

7  works would be."). In addition, if a plaintiff's work has already been published, the

8  second factor further weighs in favor of fair use, as the "artist's expression has

9  already occurred." *Id*. Ultimately, however, "this factor is not terribly significant in

10  the overall fair use balancing." *Calkins*, 561 F.Supp.2d at 1142.

11  As already demonstrated, the West Photo contains little creativity, taken

12  opportunistically and spontaneously as circumstance allowed (in the nature of all

13  paparazzi photography). There was no staging. There was no directing of West to

14  pose in a certain way. There was no altering of the lighting or surrounding décor on

15  location. There was no selection of wardrobe or casting of participants. There was

16  no determination of location prior to the photograph being taken. Simply put, the

17  photograph was not meant to be creative, but rather purely informative.

18  Furthermore, Plaintiff already exhausted the limited and time-sensitive market

19  for the West Photo by licensing it to various publications when it was newsworthy.

20  *See* RJN Exs. 3, 5. "[T]hus, pairing the neutrality of the [West Photo] 'with the fact

21  of previous publication, the nature of the images tips slightly in Defendant's

22  favor.'" *Walsh v. Townsquare Media, Inc*., No. 19-CV-4958 (VSB), 2020 U.S.

23  Dist. LEXIS 96090, at *20 (S.D.N.Y. June 1, 2020) (quoting *BWP Media USA, Inc.*

24  *v. Gossip Cop Media, Inc*., 196 F. Supp. 3d 395, 408 (S.D.N.Y. 2016)

25  Accordingly, the second fair use factor weighs in favor of Defendants.

26  **3. Amount and Substantiality Used**

27  The third fair use factor considers the quality and quantity of the work taken.

28  *Campbell*, 510 U.S. at 586–87. The "extent of permissible copying varies with the

purpose and character of the use. *Id.* at 586. "If the secondary user only copies as much as is necessary for his or her intended use, then this factor will not weigh against him or her." *Kelly*, 336 F.3d at 820–21. As such, even reproducing an entire work does not weigh against fair use if it was "reasonable to do so in light of [] the purpose for using [the work]." *Calkins*, 561 F.Supp.2d at 1143 ("it was necessary for PEI to copy the entire Photograph in order to personalize Shannon by showing Playboy readers how Shannon looked as a high school senior. To use a lesser portion of the Photograph would have defeated PEI's purpose for using it").

Here, Defendants used no more of the West Photo than necessary – the portion depicting Mr. West himself, used to identify the aesthetic being mimicked by the Figurine. Without using the portion of the West Photo reflected on the Packaging, it would be impossible to fully convey the message of the Figurine, either because viewers would be unaware of Mr. West having adopted the aesthetic depicted or would be unable to identify it without closely inspecting the Figurine. Moreover, because the Figurine and Packaging strips away every element of the West Photo besides Mr. West's likeness, they "contains little, if any, of the copyrightable elements of the [West Photo]." *Warhol*, 382 F. Supp. 3d at 329.

Accordingly, the third fair use factor weighs in favor of Defendants.

**4.  Effect of Use on Market**

The fourth fair use factor focuses on whether the allegedly infringing work acts as a market substitute for the original work. *Seltzer*, 725 F.3d at 1179. If it is clear that the use of the allegedly infringing work will have no impact on the plaintiff's market, then a finding of fair use is appropriate. *Kelly*, 336 F.3d at 944.

Where transformative use is implicated, it inherently serves a different market than the original work. *See Seltzer*, 725 F.3d at 1179 (finding "no reasonable argument that conduct of the sort engaged in by [the defendant] [was] a substitute for the primary market for [the plaintiff's] art."). As already discussed, Defendants' use of the West Photo to model the Figurine and as a reference on the Packaging

1    does not serve as a market substitute for Plaintiff's photography. Imagine, just for

2    example, how ridiculous the Yahoo Sports article that led Defendants to the West

3    Photo would look with an image of the Figurine and Packaging instead:



15   Defendants' use of the West Photo in no way interferes with Plaintiff's

16   business of licensing celebrity paparazzi images to news and gossip sites, which

17   does not overlap with Defendants' manufacture of products commenting on those

18   celebrities, because nobody viewing the Figurine or Packaging would see them as

19   an acceptable substitute for the much clearer and more detailed West Photo as

20   licensed by Plaintiff. *See Warhol*, 382 F. Supp. 3d at 330-31 ("[Plaintiff] provides

21   no reason to conclude that potential licensees will view [Defendants' Figurine and

22   Packaging], as a substitute for [the West Photo]."); *Walsh*, 2020 U.S. Dist. LEXIS

23   96090, at *22 ("Here, because the [West Photo] did not appear on its own, but as

24   part of the [Figurine and Packaging], it is implausible that [Defendants'] use would

25   compete with Plaintiff's business or affect the market or value of [its] work."). If

26   anything, Defendants' use is likely to increase interest in the West Photo, as any

27   viewers unfamiliar with Mr. West's aesthetic as reflected by the Figurine and

28   Packaging would seek out reporting containing the West Photo in order to gain

understanding that Defendants' isolated and acontextual use cannot provide. *See, e.g., Hofheinz v. Discovery Communs., Inc.*, 2001 U.S. Dist. LEXIS 14752, at *23 (S.D.N.Y. Sep. 10, 2001) (finding fair use and no market harm where "the only effect that [the defendant's work] likely had upon the market for [the plaintiff's work] was to increase interest in [the defendant's work]").

Accordingly, the fourth fair use factor weighs in favor of Defendants.

**F.  PLAINTIFF'S COMPLAINT CANNOT BE CURED BY AMENDMENT**

When a motion to dismiss is granted, the court must decide whether to grant leave for the plaintiff to amend its complaint. Although the Ninth Circuit has a liberal policy favoring amendment, *see, e.g., DeSoto v. Yellow Freight System, Inc.*, 957 F.2d 655, 658 (9th Cir. 1992), a court need not grant leave to amend when permitting a plaintiff to amend would be an exercise in futility. *See, e.g., Rutman Wine Co. v. E. & J Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile."). While it is possible that Plaintiff could cure its deficient standing by providing proof of having properly registered the West Photo with the Copyright Office, it would still be unable to demonstrate that Plaintiff infringed, either because Defendants did not appropriate the protected selection and arrangement of elements from the West Photo in a virtually identical fashion, or because any such taking is clearly fair use. Therefore, it would be futile to grant Plaintiff leave to amend its fatally defective complaint.

**V.   CONCLUSION**

For all the foregoing reasons, Plaintiff's Complaint should be dismissed with prejudice, and the Court should issue an order to show cause for why Defendants should not be awarded their reasonable costs, including attorneys' fees, under 17 U.S.C. § 505. *See Stern v. Does*, 978 F.Supp.2d 1031, 1050 n. 13, 1052 (C.D. Cal 2011); *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1989 (2016) (courts may award fees to deter "overaggressive assertions of copyright claims").

1   Dated: June 8, 2020

**JOHNSON & JOHNSON LLP**

By   /s/ Daniel B. Lifschitz

Daniel B. Lifschitz
*Attorneys for Plaintiff*